# ALLEGHENY COUNTY,

## March Term, 1794.

### ADAM BIRCHFIELD, Adminiftrator of WILLIAM REDDEN, v. JACOB CASTLEMAN.

AN action of covenant on a conveyance from *Castle-*     1794.
*man* to *Redden*, of all right and title in feventy
acres of land, for 70*l.* dated 13th *January*, 1781, with
a warranty againft all claiming by improvement. The
land is near *Pittfburgh*, and was then in *Weftmoreland*
county. The plaintiff produced a copy of an ejectment
for this land, brought in *Weftmoreland* county court to
*July* term, 1781, by *William Boniface* againft *Redden*;
in which, after iffue joined, and a rule for trial, there
was a judgment *nifi*, at *April* term, 1785; and an *ha-
bere facias poffeffionem* and *fieri facias* for 3*l.* 16*s.* 11*d.*
cofts returnable to *July* term, 1785.

*Brackenridge*, for the plaintiff, then offered to prove,
that, at the time of the execution of the deed, on a con-
verfation refpecting any claims, which might be brought
forward, it was agreed between *Castleman* and *Redden*,
that *Castleman* fhould defend the fuits, which might be
brought, and *Redden* fhould pay half the cofts.

Leave was given to introduce this proof, referving
the point, and making it a part of the record, that the
defendant might have the advantage of it, either on a
motion for a new trial, or on a writ of error.

It was then proved by the fubfcribing witnefs to the
deed, who was prefent at the bargain, that *Castleman*
(being acquainted in the country, and *Redden* a ftran-
ger) agreed, that, if any fuit were brought againft *Red-
den* for this land, he would carry it on; and *Redden*
agreed, that he would pay half the cofts. *Boniface*, who
brought the ejectment, proved, that he had lived on the
land for fix months, and made an improvement on it,
in 1779; that *Castleman* " ftood the fuit at *Weftmoreland*,

N 3

to try the title;" and that, when he brought the eject-
ment, in *Westmoreland*, he had no warrant for the land,
but afterwards, in *December*, 1784, procured one.

*Rofs*, for the defendant. *Castleman* was to defend
againſt improvements. The proceedings in ejectment
are irregular. *Redden* ought to have defended the ſuit;
he did not, for he ſuffered an irregular judgment to be
obtained. After iſſue joined, how could there be judg-
ment without a trial by jury, unleſs the defendant con-
feſſed it. *Redden* ſuffered *Boniface* to take out a warrant
firſt, having lien by five months after the office opened.
*Castleman* would have taken out a warrant, if he had
not ſold to *Redden* ; and *Redden* ought to have done it,
and ſecured the land. There is no evidence, that *Red-
den* furniſhed *Castleman* with half the coſts of the eject-
ment, as he undertook to do.

*Brackenridge*, for the plaintiff. *Redden* was dead
before the judgment. The letters of adminiſtration are
dated in *Auguſt*, 1784. *Redden* would have acted diſ-
honeſtly in taking out a warrant, for the land on which
another had made an improvement.

PRESIDENT. If *Castleman* had notice, he was bound
by his agreement, to defend the ejectment, and if he
did not, he muſt take the conſequences of the recovery
againſt *Redden*. Though *Redden* was to pay half the
coſts, I ſee no reaſon riſing out of this evidence, as now
given, to prevent his recovering damages now. If the
coſts of the ejectment were meant, it ſeems he has paid
them all. If the expences of *Castleman* in defending
were meant, he only could aſcertain them; and he ought
to have aſcertained and demanded them. Until he do
this, *Redden* is in no default; and of doing this we have
no evidence. A reaſonable excuſe for delay, in taking
out a warrant, ariſes from the ejectment brought, im-
mediately after the purchaſe of the land; for, in the trial
of this ejectment, no warrant obtained after the com-
mencement of the ſuit, could be given in evidence.—
Pending the ejectment, the Board of Property would
have given no patent, and they would have been govern-
ed by its deciſion. There was no title from the Land
Office, that could have been given in evidence on that
trial ; and the event of that trial muſt have depended
on the ſettlement or improvement right, which *Castle-*

*man* warranted to *Redden*. This settlement or improve- 1794
ment right was the very thing, which *Redden* bought
from *Castleman*, and which *Castleman* warranted to him:
it was the very essence of the bargain, and *Castleman*
has failed in his warranty of it.

The jury found a verdict for the plaintiff, for 33*l*.
12*s*. 6*d*. damages, which was the amount of the price
paid, and the interest, and one half of the costs in
*Westmoreland*.

At *December* term, 1794, a new trial was moved for.

*Woods*, for the new trial. If *Castleman's* title to this
land can be examined, it will be found better, than the
title of *Boniface*. And I would not move for a new
trial, if 1 were not convinced, that injustice is done by
the verdict, which I now move to set aside.

*Castleman* was not bound to warrant against any loss
accruing from *Redden's* neglect of taking out a warrant.
The judgment in *Westmoreland* is irregular, and there-
fore not more to be regarded, than if it had been before
a justice of the peace. The turning *Redden* out of pos-
session on this judgment, is therefore irregular and a
trespass. *Castleman* was only bound to defend against
a regular recovery, not against trespasses. The deed
does not bind *Castleman* to defend an ejectment, but,
after a defence by *Redden*, and an eviction of him, to make
good to him the loss. The admission of any parole tes- 1 *PowelContr.*
timony, varying this obligation, is inadmissible. This 431.
parole testimony is an additional contract, and a ground 2 *Bla. Rep.*
of an action on the case. The action brought is cove- 1249.
nant on a deed. The admission of this evidence is
joining, in one, two actions, which cannot be joined.

*Brackenridge*, for the plaintiff. Whether the judgment
be regular, or not, there was an *habere facias possessionem*,
and we have been turned out of possession. But it is
immaterial, whether the judgment was regular or not ;
if *Castleman* was bound to defend, the ejectment, it was
his business to see to the regularity of the judgment.

The question therefore really turns upon this point ;
was the parole evidence admissible or not ?

It was not to vary the agreement. It was only proof
of a collateral agreement made at the same time ; as, on 2 *Bla. Rep.*
a contract of lease, you may prove, by parole, who was 1249.

*N* 4

bound to repair. It is true, we could not, by parole proof, shew that more land was sold, or for a higher estate, than the deed shews, but we may prove the collateral matter, of the manner, in which the warranty and defence was to be made.

At *March* term, 1795, the opinion of the court was delivered.

PRESIDENT. This action is founded on a covenant " *to make good a tract of land, from all persons claiming, except the lord of the soil, of any legal improvement, made before or after the improvement purchased by Castleman,*" who conveyed the land to *Redden,* with this covenant inserted in the conveyance, on 13th *January,* 1781. At the trial of this action, last *March* term, the plaintiff produced an exemplification of proceedings in an ejectment in *Westmoreland* county court, brought by *William Boniface* against *Redden,* for this land, to *July* term, 1781. This exemplification states an issue joined, and, afterwards, at *April* term, 1785, a judgment *nisi,* and to *July* term, 1785, an *habere facias possessionem,* and a *fieri facias,* for 3*l.* 16*s.* 11*d.* costs.

This evidence was, *prima facie,* sufficient to support the action: and here, till something to defeat it appeared, the plaintiff might have rested. But his counsel then offered to prove, that, at the time of the sale, and of the execution of the deed, it was agreed by the parties, that, if any suit was brought against *Redden, Castleman* would defend it, and *Redden* would pay half of the costs.

This parole testimony out of the deed was objected to, but we admitted it, reserving the point, and making it part of the record. The proof was then made, and it was also proved, that *Castleman* "stood the suit at *Westmoreland* to try the title ;" that *Boniface* had then no legal title for the land, but had lived six months, and made an improvement on it, in 1779. On this evidence, the jury here found a verdict for the plaintiff, for the amount of the purchase money and interest, and of one half of the costs in *Westmoreland* county court.

The counsel for the defendant, alledging that the merits are in his favour, moved to set aside this verdict, on these two grounds,

1. That the judgment in *Westmoreland* county court, being after issue joined, and without a trial, is irregular,

and not to be regarded. There is, therefore, no legal oufter of *Redden*, and *Caftleman* is not bound to defend againft illegal acts.

2. That the parole teftimony ought not to have been admitted, as it is a feparate undertaking altering the nature and effect of the covenant; and its admiffion amounts to joining an action on the cafe, with an action of covenant.

*1 Powel Contr. 431.*
*2 Bla. Rep. 1249.*

The plaintiff's counfel, obferving, that the judgment, whether regular or not, had turned *Redden* out of poffeffion, confined the argument to what he confidered as the only point in the cafe, the admiffibility of the parole teftimony ; which he fupported, as not altering the contract, in any material point, but eftablifhing a collateral agreement, explaining the manner, in which the contract was to be executed ; as, in a leafe, you may fhew who was bound to repair.

*2 Bla. Rep. 1249.*

The queftion comes before us now in a fhape, which excludes any difcovery of merits in favour of the defendant. But, if the recovery in *Weftmoreland* was proper, or if the parole teftimony admitted be true, the merits are againft him.

But whether the teftimony be true or not, if its admiffion was improper, the verdict muft be fet afide ; unlefs there be other circumftances in the cafe, which render it of no weight, in either fcale, and incapable of biaffing the decifion towards either fide, or at leaft, the fuccefsful fide, of the queftion.

I cannot therefore fay, that there is but one point, the admiffibility of the teftimony, in this cafe.—For though, if the teftimony be admiffible, the verdict muft ftand, it will not follow, that if the teftimony be inadmiffible, the verdict muft be fet afide. To fet the verdict afide for inadmiffible teftimony, fuch teftimony ought to be alfo material. For if it be altogether nervelefs, and there be other circumftances in the cafe, which would neceffarily make the verdict fuch as it is ; why fet afide a verdict for admitting teftimony, however incompetent, that was altogether neutral and immaterial ? If the teftimony fhould be fuppofed inadmiffible, ftill the verdict muft ftand, if the recovery in *Weftmoreland* muft be confidered here as proper.

There may therefore be too points in this cafe, but

if either of them turn out in favour of the plaintiff, his verdict must stand.

Were it necessary to give an opinion on both, I would say, that both points are in favour of the plaintiff.

An execution ousting *Redden* from this land, and a judgment of a court of competent jurisdiction, warranting this execution, have been shewn. It was not necessary to shew more. It was not necessary to state all the proceedings previous to the judgment. Such statement is superfluous, and, if imperfect, we ought rather to presume a defect in the statement, than an error in the court. The court had jurisdiction, and we ought to presume a proper exercise of it. And though the proceedings had been irregular, the ouster by this execution could be no trespass. The case put, of a justice giving such judgment, is not similar. He has no jurisdiction; and though he should proceed with all the solemnities of a competent court, his acts would be void; and his officer a trespasser.

But granting, that because no trial is stated, we should believe, that no trial existed, I should hesitate greatly to invalidate a judgment, while I could not remove its effects. We are not a court of error, to correct the judgments of other county courts. A court of error could have annulled the judgment, and ordered restitution of the land. We cannot do this.

True, on this first point merely, we cannot know, that *Castleman* was actually to be considered as a party to the ejectment in *Westmoreland*; and, therefore, it may be said, he ought not to be affected by it, without an opportunity of impeaching it. And though, as between the parties, we certainly have no power to invalidate an existing judgment of a competent court of equal authority, yet, as between strangers, there seems more ground for contending the point. But, considering the nature of his engagement to warrant, was *Castleman*, after notice of the ejectment (and he had notice, for it is proved, that he "stood the suit") in the situation of a stranger? Was he not competent, was he not bound, to defend it? I shall say more of this afterwards. If he did not defend the ejectment, must he not stand to its decision; or was *Redden* obliged to go to the *dernier* resort of courts of error, before he could come at *Castleman*? Having

3 *T. Rep.* 377.

1794.

had judgment againſt his title, in a court of competent ju-
riſdiction, muſt he examine all the irregular proceedings
of this court, before he can call for his money ? Muſt
he beſtow more money and time, in coſts, expences, at-
tendance, &c. in expectation of recovering an adequate
recompence from *Caſtleman* ? Perhaps he was not able,
to proſecute the ſuit farther. Would it not have been
reaſonable for *Caſtleman*, if he meant to diſpute the pro-
ceedings of *Weſtmoreland* court, to apply to *Redden* (if
this was neceſſary) for leave to uſe his name, and, at his
own expence, to have the proceedings ſet right, and the
title, which he ſold, fairly inveſtigated ? What are we
to infer from a neglect of this ? Had *Redden* refuſed to
lend his name, this might have been evidence of collu-
ſion with *Boniface* ; and colluſion, or fraud, or improper
conduct, on the part of *Redden*, would have been good
evidence in favour of *Caſtleman*, againſt the moſt regular
judgment ; for no man can found his claim in fraud.—
And though we ſhould hold ourſelves incompetent, to
examine the irregularity of the proceedings of a court
of equal authority, we have nothing to reſtrain us from
examining the fraud of the parties.

On the other point, I am of opinion, that the evi-
dence was properly admitted.

It is a principle of common law ; and by the ſtatute
of frauds rigidly applied to ſome particular caſes, that
parole proof ſhall not be received, to vary, augment, or
diminiſh a complete deed or writing. Such proof is *Brown vs.*
particularly condemned, if it affect the writing in a *Selwin, Ca.*
material part ; as if, in a will, it alter the diſpoſition of *temp. L. Tal-*
a legacy, or, in a conveyance of one parcel of land, it *bot 240.*
convey alſo another, or, in a leaſe, it vary the term or the *Ca. 179.*
rent. But if the proof offered tends to affect the writ- *Meres v An-*
ing only in an immaterial part ; or to eſtabliſh ſome- *275. Preſton*
thing collateral, as, in a leaſe, who ought to repair, or *v. Merceau,*
to wave part of the agreement ; or, where the writing *2 Bla. Rep.*
might operate in more ways than one, to ſhew the in- *Cheney's caſe,*
tention of the parties, which way it ſhould operate ; or *5 Co. 68. See*
to rebut an equity ; courts diſcover leſs nicety, and will *Miller, 2 Ve-*
admit the proof. *ſey 299, and*

The principle is found, and ought to be adhered to : *Veſey jr 404.*
for deeds and writings would be altogether uſeleſs, if
they were liable to be annulled or explained away, by

1794.

parole teſtimony. The inducement to perjury would alſo be ſtrong. At the ſame time, the inconvenience would be great, if overſights, omiſſions, and miſtakes, in points doubtful or collateral, or leſs eſſential, could not be remedied ; and the danger of perjury, by admitting parole proofs, here, ſeems to be leſs.

The application of theſe principles, as in all caſes, where the boundaries are obſcure, ſeems to be attended with difficulty. In one great caſe on this point, the maſter of the rolls admitted the proof, but on appeal to the chancellor, it was rejected, though, it was ſaid, with ſome remorſe. His decree was appealed from; but the Houſe of Lords affirmed it. In another caſe lord *Mansfield*, at *Niſi Prius*, admitted the proof, and reported ſatisfaction with the verdict; but the court of Common Pleas rejected it, and ordered a new trial. It will, therefore, be no matter of ſurpriſe, if counſel on both ſides ſeriouſly entertain oppoſite opinions, or if our opinion ſhould, by one ſide, be conſidered as erroneous.

The covenant here is, in fact, a warranty of *Castleman's* improvement title, againſt all other improvement titles. The plaintiff ſhewed, that a judgment was recovered againſt his title, in favour of another improvement title. He had then ſhewed enough, and needed no further proof, till the objection was made to the regularity of this judgment. The parole proof was offered to ſhew, that the judgment was, in fact, againſt *Castleman*, for he was bound to defend. Perhaps then, it is not refining too much, to ſay, that the proof was not ſo much directly to maintain the action, or a part of the covenant, as to repel an objection made to the contingent event, on which there ſhould be a recovery againſt *Castleman*. Has it not the appearance of a collateral matter, as if, in an action for rent, one of the parties ſhewed a failure to repair, or a ſum laid out in repairs, and the other offered proof, that, ſeparately from the rent, the obligation to repair lay on him; or proof of a ſubſequent agreement to pull down, inſtead of repairing, a houſe found not worth repairing.

This covenant is a warranty, or agreement to indemnify. Let us conſider the nature of this obligation.

A creditor, for a debt contracted by a wife, having recovered againſt the huſband, who had a bond of in-

*Brown v. Selwyn, Ca. temp, L. Talbot 240. 4 Bro. Parl. Ca. 179. 2 Alk. 375. See Nourſe v. Finch, Veſey ju. 357-62. Meres verſus Anſel, 3 Wils. 275.*

*2 Bla. Rep. 1249.*

*Legal v. Miller, 2 Veſey 299.*

demnity againſt his wife's debts, an action was brought on this bond by the huſband. In this action, juſtice *Buller* ſays, " If a demand be made, which a perſon indemnifying is bound to pay, and notice be given him, and he refuſe to defend the action, in conſequence of which, the perſon indemnified is obliged to pay the demand, that is equivalent to a judgment, and eſtops the other party from ſaying, that the defendant in the firſt action was not bound to pay the money."

By the antient law, if the right of land or of a chattel was diſputed, the poſſeſſor might call into the action any perſon bound to warrant it; and the warrantor then became, in fact, the defendant, and was affected by all the proceedings. Leſt a landlord might colluſively ſuffer a claimant to recover judgment againſt him in a real action, and, thereby, turn out his tenant, before the expiration of his term, an opportunity was allowed the tenant, to queſtion the fairneſs of the recovery, and, if it appeared colluſive, the execution was ſtaid, till the expiration of his term. Leſt tenants ſhould colluſively give up their poſſeſſion to adverſe claimants, and diſpoſſeſs their landlords; landlords are permitted to become defendants in ejectment. And, in any caſe whatever, when a perſon bound to indemnify another has had notice that a ſuit is brought againſt the perſon indemnified, for the thing which is the ſubject of indemnity, it would ſeem, from the expreſſions of juſtice *Buller*, that it is the duty of the indemnifier to ſtep into the place of the indemnified, and become defendant in his room. If he fail to do this, he ſeems to loſe his right of obliging the perſon indemnified to a rigorous defence of the action, and to become himſelf liable to all the conſequences of his neglect.

This ſeems to be the ſenſible and juſt method of performing a warranty or indemnification. It ſeems to be ſupported by antient and modern principles. It ſaves time, coſts, and circuity of action, which the law abhors, and it does juſtice at once. And if, when the ejectment was brought in *Westmoreland* againſt *Redden*, he or *Castleman* had called on a profeſſional lawyer, to give his opinion on this covenant, in what manner, the warranty ought to be performed, I think, his opinion would have been, that the proper, natural, and legal conſtruction of

*[margin notes]*
1794.

*Duffield vs. Scott* 3 T. Rep 374, 377.

1 *Reeve Eng. Law* 132,167 437. 2 *Reeve* 120, 145, 150, 185.

3 *T. Rep.* 377.

this warranty is, that *Castleman* knowing the witnesses, and the merits of the title, shall take upon him the defence of the action.    This is precisely the construction, which the proof shews the parties to have put on it.

Does then this parole agreement of *Castleman's*, to defend any ejectment, annul the written covenant, or defeat it, or enlarge it, or diminish it, or otherwise vary it ?  I think not.   I think this parole proof establishes the covenant, in its legal, natural, and just construction, and gives it a proper force, and honest effect.    To exclude this testimony, is only to leave room to impose on the covenant a construction less natural and just, which will produce its effect indirectly and circuitously, and put all parties to greater expence, and which has not more, but rather less, the sanction of legal principles and practice, than the construction put on it by this agreement.    Shall we then exclude the testimony ?  Do the words of the covenant exclude the construction put on them, by this agreement ?   Or do they necessarily or properly imply, that the warranty shall not operate, unless there were first a recovery against *Redden* in an action, in which *Castleman* should have no concern ?   I think not.

Therefore, I think, the evidence was properly admitted.   Its admission establishes that *Castleman* was bound to defend in the ejectment. If so (as he had notice) the suit was his ; and, whatever irregularities there may have been in it, he must abide by them.    I even know not, whether, from the opinion of justice *Buller* (and no opinion is more respectable) it may not be fairly inferred, that the result would be the same, had no such parole agreement existed, but only notice of the ejectment, and a call to defend it.